UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID N.,[1]

                            Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

DECISION & ORDER

20-CV-0085MWP

**PRELIMINARY STATEMENT**

Plaintiff David N. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 11, 12). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

I. **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  See *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

3

>    (4)   if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and
>
>    (5)   if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.   **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 15, 2016, the application date. (Tr. 17).[2] At step two, the ALJ concluded that plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder ("PTSD"). (*Id.*). The ALJ also determined that plaintiff suffered from an eye injury, right hand pain, and left-hand finger numbness, but that those impairments were nonsevere. (Tr. 18). At step three, the ALJ found that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 18-19).

---

[2] The administrative transcript (Docket # 6) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

The ALJ concluded that plaintiff retained the RFC to perform a full range of work at all exertional levels, but with certain nonexertional impairments. (Tr. 19). Specifically, the ALJ limited plaintiff to unskilled, simple, routine, and repetitive tasks; low-stress jobs (defined as making only occasional decisions and tolerating only occasional changes in the work setting); no more than occasional contact with supervisors and no more than occasional interaction with coworkers, but no team or tandem work; and, no contact with the general public in performing work-related duties. (*Id.*). At step four, the ALJ found that plaintiff had no past relevant work. (Tr. 22). At step five, the ALJ determined that other jobs existed in significant numbers in the national economy that, based on his age, education, work experience, and RFC, plaintiff could perform, such as linen room attendant, cleaner II, garment sorter, and assembler II. (Tr. 23). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 24).

### III.     Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he was not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 11, 13). First, plaintiff argues that the ALJ's mental RFC determination is not supported by substantial evidence. (Docket # 11-1 at 10-16). Second, plaintiff maintains that the ALJ's credibility analysis was flawed. (*Id.* at 16-20).

### IV.     Analysis

#### A.     The ALJ's Mental RFC Determination is Supported by Substantial Evidence

I turn first to plaintiff's contention that the ALJ's mental RFC determination is not supported by substantial evidence. (*Id.* at 10-16). Specifically, plaintiff argues that the ALJ

5

erroneously discounted the most restrictive portions of the opinion of consultative psychologist Gina Zali ("Zali"), PsyD – those relating to plaintiff's ability to make appropriate decisions and appropriately deal with stress – based on his lay interpretation of the medical evidence. (*Id.* at 12-14). Plaintiff also maintains that the ALJ "fail[ed] to conduct an adequate individualized stress analysis" in reaching the RFC determination. (*Id.* at 14-16). For the reasons discussed below, I disagree with plaintiff.

        An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

        On November 17, 2016, plaintiff underwent a consultative psychiatric evaluation conducted by Zali. (*See* Tr. 262-66). Plaintiff was accompanied to the examination by his mother and a friend, and he reported to Zali that he lived with his mother, had completed the tenth grade in a regular education setting, obtained his GED while in prison, and was not currently employed, but in the past had worked for several months as a mechanic before relocating. (Tr. 262). He also stated that he could not work because he "c[ouldn't] deal with

people and ha[d] very bad trust issues." (*Id.*). In terms of his psychiatric history, plaintiff reported that he received treatment in prison, where he had "spent most of his life . . . for nonviolent crimes," received outpatient treatment at BryLin Behavioral Health Center ("BryLin"), and had a "long history of drug addiction." (*Id.*). Zali noted that records from BryLin indicated that plaintiff had a history of depression, anxiety, and childhood trauma, and had diagnoses of PTSD unspecified, major depressive disorder recurrent moderate, and generalized anxiety disorder. (*Id.*). At the time of the psychiatric evaluation, plaintiff was receiving treatment at Drug Abuse Research & Treatment ("DART") in Buffalo, New York, as well as individual counseling, group therapy, and medication treatment. (*Id.*). Plaintiff also exhibited depressive symptomology, reporting to Zali that he felt depressed, described his mood as "aggravated," and reported social withdrawal, as well as anxiety-related symptomology, such as nightmares, trust issues, difficulty being in crowds, and panic attacks, which were more likely to occur in a crowded environment. (Tr. 263).

On mental status examination, Zali noted that plaintiff was cooperative and that his manner of relating and social skills were adequate. (Tr. 264). Despite having tense posture, plaintiff appeared well-groomed, had normal motor behavior, appropriate eye contact, normal speech, and coherent and goal-directed thought processes. (*Id.*). Moreover, while plaintiff exhibited tense affect, an "aggravated" self-described mood, and "mildly impaired" attention and concentration due to the anxiety of the evaluation, he otherwise had clear sensorium, was fully oriented, had intact recent memory, and intellectual functioning estimated to be average. (*Id.*). Zali indicated that plaintiff's insight was limited and that his judgment was fair. (Tr. 264-65).

As far as activities of daily living, plaintiff reported that he could dress, bathe, and groom himself, cook, prepare food, perform general cleaning, and do laundry. (Tr. 265). He did

need assistance with shopping in a grocery store due to social anxiety and with managing money, and his mother helped him with activities he could not perform. (*Id.*). Plaintiff also could not drive because his license had been revoked, and he relied on others for transportation. (*Id.*). Plaintiff reported that he enjoyed watching television, listening to the radio, and working on cars, but stated that "he should be with somebody when doing outside activity." (*Id.*).

Zali diagnosed plaintiff with PTSD with panic attacks, major depressive disorder, moderate recurrent per history, opiate use disorder, in early remission, alcohol use disorder, in early remission, cannabis use disorder, in early remission, cocaine use disorder, in early remission, benzodiazepine use disorder, in early remission, and she noted that plaintiff reported that he had been diagnosed with asthma. (Tr. 265-66). Zali opined that plaintiff's prognosis was "[g]uarded." (Tr. 266). She also opined that plaintiff evidenced no limitations in his ability to follow and understand simple directions and instructions or perform simple tasks independently, mild limitations in his ability to maintain attention and concentration, maintain a regular schedule, moderate limitations in his ability to perform complex tasks and relate adequately with others, and marked limitations in his ability to make appropriate decisions and appropriately deal with stress. (Tr. 265). In Zali's view, the results of her evaluation "appear[ed] to be consistent with psychiatric and substance use problems, [which] may significantly interfere with [plaintiff's] ability to function on a daily basis," and she recommended that plaintiff continue with his treatment. (*Id.*).

The ALJ reviewed this opinion and assigned it "some weight." (Tr. 21, 22). In doing so, the ALJ explained that Zali "overestimate[d] [plaintiff's] limitations with regard to making appropriate decisions and appropriately dealing with stress." (Tr. 22). Pointing to Zali's own mental status examination of plaintiff, the ALJ noted that plaintiff "maintained appropriate

eye contact despite a tense posture, . . . he exhibited a cooperative demeanor and adequate manner of relating[, and] [plaintiff's] speech was fluent and not described as pressured." (*Id.* (citing Tr. 264)). The ALJ also observed that "the subsequent medical record document[s] that [plaintiff's] anxiety symptoms decreased." (*Id.* (citing Tr. 316)). Accordingly, the ALJ reasoned that "the severity of limitations opined by Zali [were] not consistent with her own mental status examination findings, and d[id] not reflect [plaintiff's] improved anxiety symptoms." (*Id.*).

Although plaintiff contends that the ALJ erroneously discounted Zali's opined marked limitations based on his lay opinion (*see* Docket # 11-1 at 12-14), I find that any error in the ALJ's weighing of this opinion – even if one could be found to have been committed – was harmless because it would not have changed the outcome of the ALJ's decision. Remand is thus not warranted on this ground.

"Irrespective of the terminology used by the ALJ, whether it be 'great weight,' 'little weight,' 'some weight,' or 'no weight,' the relevant inquiry is whether the ALJ in fact incorporates or accounts for the limitations assessed by the medical professional in the RFC, as opposed to basing the RFC determination upon his or her own lay interpretation of the medical evidence." *See Mathews v. Comm'r of Soc. Sec.*, 2020 WL 4352620, *8 n.10 (W.D.N.Y. 2020). Although the ALJ assigned only "some weight" to Zali's opinion and disagreed that plaintiff's decision-making and stress limitations were marked, the RFC formulated by the ALJ is consistent with and incorporates these aspects of Zali's opinion.

As an initial matter, "[m]arked limitations in mental functioning, including a marked limitation in ability to deal with stress, do not mandate a finding of disability." *Uplinger v. Berryhill*, 2019 WL 4673437, *7 (W.D.N.Y. 2019). Rather, such limitations may be addressed through restrictions in a plaintiff's RFC, *see id.*, precisely as the ALJ did here in

9

formulating plaintiff's RFC.  Specifically, the ALJ limited plaintiff to a low-stress job involving only occasional decision-making and only occasional changes in the work setting, as well as to unskilled, simple, routine, and repetitive tasks.  (Tr. 19).  He also restricted plaintiff's required interaction with others by limiting him to no more than occasional contact with supervisors, no more than occasional interaction with coworkers, no team or tandem work, and no contact with the general public in performing work-related duties.  (*Id.*).  These limitations are consistent with Zali's assessment as they adequately accommodate a marked limitation in appropriately dealing with stress.  *See Martin v. Saul*, 2020 WL 5096057, *5 (W.D.N.Y. 2020) (ALJ accounted for marked limitations managing stress by limiting plaintiff to low stress work involving simple decisions, no production rate pace, few workplace changes, and only occasional contact with others); *Rice v. Comm'r of Soc. Sec.*, 2020 WL 4283894, *4 (W.D.N.Y. 2020) (ALJ accounted for moderate-to-marked limitations appropriately dealing with stress by limiting plaintiff to simple work in a low stress environment involving simple routine decisions, occasional contact with others, and no production-rate pace); *Blocker v. Saul*, 2020 WL 1047737, *6 (W.D.N.Y. 2020) ("the ALJ accounted for [p]laintiff's stress limitations by incorporating into [p]laintiff's RFC limitations to 'simple routine tasks,' 'occasional interaction with coworkers and the general public,' and 'low stress work defined as work involving only occasional decision making'[;] . . . [s]uch limitations have routinely been found to adequately account for a marked limitation in dealing with stress"); *Swanson v. Comm'r of Soc. Sec.*, 2020 WL 362928, *4 (W.D.N.Y. 2020) ("the RFC limits [p]laintiff to work in a 'low-stress environment, which is defined as an environment with no supervisory duties, no independent decision-making required, no strict production quotas and minimal changes in work routine and processes[;] . . . [t]his limitation adequately accounts for [consultative examiner's] opinion that [p]laintiff was markedly limited

in dealing with stress"); *Uplinger v. Berryhill*, 2019 WL 4673437 at *7 ("the ALJ appropriately incorporated marked limitations in dealing with stress . . . into plaintiff's RFC by limiting plaintiff to work in a low stress work environment reflected by simple instructions and tasks, with no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes and limiting her to frequent interaction with supervisors and occasional interaction with coworkers and the general public").  Moreover, the ALJ's RFC determination limiting plaintiff to a low-stress job involving only occasional decision-making also adequately accommodates Zali's opined marked limitation in making appropriate decisions.  *See*, *e.g.*, *Kya M. v. Comm'r of Soc. Sec.*, 506 F. Supp. 3d 159, 163, 167 (W.D.N.Y. 2020) (RFC limiting plaintiff to "a 'low stress' job defined as a position with no more than occasional decision-making" accommodated plaintiff's marked limitations "for making appropriate decisions") (collecting cases).  Accordingly, any error by the ALJ in weighing Zali's medical opinion was harmless, and remand is not warranted on this ground.  *See Meyers v. Saul*, 2020 WL 5544333, *3 (W.D.N.Y. 2020) (where RFC accounted for limitations assessed by consultant, "any error by the ALJ in discounting [consulting opinion] would not have changed the outcome of the ALJ's disability determination").

   I also disagree with plaintiff that the ALJ "fail[ed] to conduct an adequate individualized stress analysis."  (Docket # 11-1 at 16).  "[W]hen determining whether mentally impaired individuals will be able to adapt to the stress-related demands of the workplace, the ALJ is required to make a thorough, individualized RFC evaluation, focusing on the individual's ability 'to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'"  *Reyes v. Colvin*, 2016 WL 56267, *5 (W.D.N.Y. 2016) (quoting Social Security

Ruling "SSR" 85-15, 1985 WL 56857, *4 (1985)).  Here, the ALJ complied with this requirement by accounting for plaintiff's stress-based limitations (as explained in detail above).

In particular, the ALJ acknowledged throughout his decision that plaintiff's PTSD and anxiety symptoms stemmed in large part from his discomfort being around other people. (*See*, *e.g.*, Tr. 18 (finding at step three that plaintiff had "moderate limitations" interacting with others, due in part to plaintiff's allegations that he "has difficulty engaging in social activities and spending time in crowds"); Tr. 20 (referencing plaintiff's testimony at the administrative hearing before the ALJ that he "had problems leaving the house and being around others"); Tr. 21 (noting plaintiff's report to Zali that he "could not work because he could not deal with people and had very bad trust issues")).  Significantly, the ALJ accounted for these alleged limitations in the RFC determination; he explained that "[a]s for social demand, the evidence of social anxiety and [PTSD] symptoms except for those [plaintiff] knows well such as family, friends, and health care providers, [plaintiff] should have no more than occasional contact with supervisors, no more than occasional interaction with coworkers, . . . never engage in team or tandem work[, and he] should have no contact with the general public with respect to performing work-related duties."  (Tr. 22).  Accordingly, I find that the ALJ satisfied his duty with respect to plaintiff's stress limitations, and remand is not necessary on this basis.  *See*, *e.g.*, *Cosme v. Colvin*, 2016 WL 4154280, *12-13 (W.D.N.Y. 2016) (ALJ's RFC finding adequately accounted for plaintiff's stress-related limitations where ALJ limited plaintiff to "positions involving unskilled work that did not require any contact with coworkers or the public and only limited contact with supervisors") (footnote omitted); *Steffens v. Colvin*, 2015 WL 9217058, *4 (W.D.N.Y. 2015) ("the RFC finding requiring low contact with coworkers and the public adequately accounted for plaintiff's stress").

      **B.**      <u>**The ALJ Properly Assessed Plaintiff's Subjective Complaints**</u>

I turn next to plaintiff's contention that the ALJ failed to conduct a proper credibility analysis. (Docket # 11-1 at 16-20). Specifically, plaintiff maintains that the ALJ "failed to articulate any specific reasons for finding his allegations were not credible and simply recited boilerplate language." (*Id.* at 16). For the reasons explained below, plaintiff's challenge is without merit.

An evaluation of subjective complaints should reflect a two-step analysis. *See* 20 C.F.R. § 416.929.[3] First, the ALJ must determine whether the evidence shows that the claimant has a medically determinable impairment or impairments that could produce the relevant symptoms. *See id.* Next, the ALJ must evaluate "the intensity, persistence, or functionally limiting effects of [the] symptom[s]." *Id.* The relevant factors for the ALJ to weigh include:

> (1) [the claimant's] daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [his or her] pain or other symptoms . . . ; and (7) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. § 416.929(c)(3)(i)-(vii).

Here, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," but concluded that plaintiff's

---

[3] The evaluation of symptoms outlined in these regulations was previously referred to as a "credibility" assessment. Recent guidance has clarified that the sub-regulatory policy will no longer use the term "credibility" because "subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2017 WL 5180304, *1 (Oct. 25, 2017).

statements "concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 20). In doing so, the ALJ assessed plaintiff's complaints in the context of the entire record, referencing instances where his allegations of disability were at odds with certain of his activities of daily living, as well as his treatment notes.

For instance, the ALJ acknowledged plaintiff's allegations that he "had difficulty leaving the house and with social functioning," but also pointed to the fact that plaintiff "le[ft] the house each day and use[d] public transportation multiple times each week." (Tr. 22). As the ALJ noted in his decision, plaintiff testified at the administrative hearing that he had been taking the bus three to four times per week to attend the methadone clinic for the past two or three years. (Tr. 20 (referencing Tr. 59-60)). Plaintiff testified that he typically went grocery shopping with his mother, but recently had been riding his bicycle to the store to buy food for both of them. (Tr. 54-55). The ALJ also referenced plaintiff's testimony that he "performed a number of household chores, had no trouble motivating himself to do things, and had no problems with personal hygiene." (Tr. 20). Indeed, plaintiff testified that he provided care for his mother (Tr. 48-49), attended individual and group therapy sessions on a weekly basis (Tr. 50), picked tomatoes from his garden and took care of three dogs daily (Tr. 52-53), cooked for himself and his mother (Tr. 53-54), and performed activities around the house like sweeping, mopping, and vacuuming (Tr. 55). In addition, the ALJ reasoned that "[d]espite allegations that [plaintiff] is uncomfortable around others, medical providers note that he is often in no acute distress, maintains good eye contact, and is cooperative in demeanor." (Tr. 22). Throughout his discussion of the medical evidence, the ALJ noted these findings on plaintiff's mental status examinations, despite his anxious presentation to providers. (Tr. 20-22 (citing Tr. 230, 216-17,

392, 394-95, 399, 404, 410, 264, 330-31)).  The ALJ's considerations were appropriate factors to weigh in assessing plaintiff's subjective complaints, and the ALJ's decision as a whole makes clear the basis of the ALJ's credibility determination.  *See Sabrina L. v. Comm'r of Soc. Sec.*, 2021 WL 1146126, *9 (N.D.N.Y. 2021) ("[a] claimant's credibility may be questioned if claimant's subjective symptoms are inconsistent with the medical evidence") (brackets and citation omitted); *Herrington v. Berryhill*, 2019 WL 1091385, *7 (D. Conn. 2019) ("it is beyond cavil that activities of daily living are an appropriate factor for an ALJ to consider when assessing a claimant's credibility") (collecting cases); *Brylski v. Astrue*, 2012 WL 1038622, *3 (W.D.N.Y. 2012) ("the ALJ was not required to discuss every credibility factor individually where, as here, the decision is sufficient to allow this [c]ourt to determine the basis for the ALJ's credibility determination").  Accordingly, remand is also not warranted on this basis.

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 12)** is **GRANTED**.  Plaintiff's motion for judgment on the pleadings **(Docket # 11)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                               *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                          United States Magistrate Judge

Dated:  Rochester, New York
         August 9, 2021